17024

A. H. BYNUM, Appellant, v. JAMES W. BARRON, D. D. McCARTER and NATIONAL SURETY CORPORATION, Respondents

(88 S. E. (2d) 67)

*Messrs. John Oates Woods,* of Rock Hill, and *Charles W. McTeer,* of Chester, *for Appellant,*

*Messrs. Robinson, Robinson & Dreher,* of Columbia, *for Respondents, James W. Barron* and *National Surety Corporation,*

June 30, 1955.

STUKES, Justice.

The York County treasurer until 1953, the respondent D. D. McCarter, was formerly compensated solely by salary and the fees authorized by the general law for the issuance of tax executions were directed to be paid into the county treasury. Code of 1942, § 4906. Beginning with the County Supply Act of 1946 the annual supply acts through 1949 contained a provision after the appropriation of the salary, as follows, "Plus execution fees and plus execution fees since his term of office began July 1, 1941." 44 Stat. 2543. 45 Stat. (First part) 1565. 45 Stat. (Second part) 3120. 46 Stat. (First part) 1732.

In 1950 and 1951 the General Assembly failed to pass supply acts for York County. However, the general law, now section 14-19 of the Code of 1952, provides in such cases that the last enacted county supply act shall be continued in force for an additional year, provided that only usual appropriations and no special appropriations for unusual purposes, if contained in such last supply act, shall be held to be appropriated by the continuance of such act. In addition, by joint Resolution, No. 671 of 1951, 47 Stat. (First part) 1584, the Supply Act of 1949 for York County was extended to the fiscal year 1951-1952 and provided, quoting, "in addition to all legal provisions of the 1949-1950 supply act" ten per cent increase in salaries of all employees.

In 1949 several taxpayers commenced an action to enjoin the payment of tax execution fees to McCarter and to require accounting by him of such as had been theretofore paid to him. Rule to show cause on Sept. 3, 1949, against McCarter and the County Board was issued by the court on July 22, 1949, and such payment, and receipt thereof by McCarter, were meanwhile restrained. It appears that no further proceedings were had in that action.

Section 16-A of the York County Supply Act of 1954, approved March 31, 48 Stat. 2640, 2651, is as follows:

"Whereas, it is found that there are now in the hands of the Delinquent Tax Collector of York County a number

of tax executions which in all probability will be collected, and that the sum of the fees on such as will be collected and become payable from time to time to D. D. McCarter for having issued the executions as Treasurer of the County, will equal or perhaps exceed the sum of the fees accruing to the Treasurer's office on executions issued between July 1, 1941 and July 1, 1946, and which have been paid to the Treasurer and that the one sum should serve as an offset against the other. The delinquent tax collector is authorized and directed to pay to D. D. McCarter the Treasurer's fees on executions issued by him and which the delinquent tax collector has received and which are now held by him. The acceptance on the part of D. D. McCarter of the sum directed to be paid to him by the delinquent tax collector under this section shall constitute a sanction on his part to the offset provided for herein, and shall forever bar him from asserting any claim in the future against York County touching and concerning fees on tax executions issued by him as Treasurer of York County. Provided, that Sections 13, 14, 15, 16 and 16-A shall become effective immediately upon the signature of the Governor."

This action was commenced by service of summons and complaint dated May 18, 1954, by appellant as a taxpayer of the county, and in behalf of other taxpayers who should join as plaintiffs, for judgment of invalidity of the quoted section 16-A of the Supply Act of 1954 (and certain other sections with which the appeal is not concerned), and for money judgment against the defendants for $4,585.00 which is alleged to have been paid by Barron, the Tax Collector, to McCarter on April 1, 1954. Numerous grounds of claimed unconstitutionality were alleged. The defendants separately demurred to the complaint and the demurrers were sustained and the complaint dismissed by order dated August 26, 1954, whence this appeal.

It was held that the annual provision in the supply acts, relating to the compensation of the treasurer, quoted hereinabove was invalid in its retroactive aspect because it at-

tempted to provide compensation of a public officer after services rendered, Const. Art. III, Section 30; *O'Shields v. Caldwell,* 207 S. C. 194, 35 S. E. (2d) 184, but that it was valid prospectively. In other words, the fees on executions issued prior to July 1, 1946, accrued to the county, but thereafter to the treasurer as compensation in addition to his salary. It was further held that the quoted provision of the 1954 supply act was, in effect, a valid compromise and settlement of the pending litigation by the General Assembly upon pertinent factual findings by it.

Appellant has submitted nine questions on appeal which will be considered and discussed *seratim* except the last which is that the court erred in holding that all necessary parties had not been made defendants. This may be summarily disposed of because the holding related to other sections of the supply act of 1954, with which the appeal is not concerned, and the point is therefore immaterial for the purposes of the appeal.

We revert to the first question which imputes error to the holding that the supply act of 1954 related to one subject and therefore was not in violation of Section 17 of Art. III of the constitution. The title of the act was, "An Act to provide for the levy of taxes for York County for the fiscal year beginning July 1, 1954, and ending June 30, 1955, for school, county and other purposes; and to direct the expenditure thereof; and to prescribe powers, duties, and authorities of various county officials of the county; *and providing for a settlement of pending litigation in respect to fees on tax executions.*" (Emphasis added.)

The authority of *Doran v. Robertson,* 203 S. C. 434, 27 S. E. (2d) 714, 717, from which we quote, is conclusive against this contention: "Petitioner's argument that other items or provisions in the Act were not sufficiently referred to in the title, or possibly do not relate to the general subject of the Act, to wit, the fiscal affairs of Charleston County,

was answered by this court in the opinion of *DeLoach v. Scheper, supra* (188 S. C. 21, 198 S. E. 409, 412), where it was said: 'The sufficiency of them (referring to the "other provisions" of the act) does not concern us since their insertion cannot affect the portions of the statute now under discussion. If, for any reason, it can be said that those objects do not relate to the subject of the Act, or that, because of their insertion, the Act relates to more than one subject, those provisions might fall (fail?) but not the remaining parts of the act. On that question, however, we express no opinion.' Necessarily, a county supply act, especially of so large and diversified a county as Charleston, is something of an omnibus." The settlement of pending litigation affecting the fiscal affairs of the county is clearly a proper subject to be dealt with in a county supply act, and proper reference was made to it in the title of the act here questioned.

The second question claims violation by the act of Section 30 of Art. III of the constitution which forbids payment of compensation to a public officer after performance of his duties. This is answered by the fact that it was held valid only to the extent that it authorized settlement of the claim of McCarter for the fees upon executions issued after the first provision therefor in the Supply Act of 1946. As said above, it was held by the lower court that the annual supply act provisions with reference to executions issued before July 1, 1946, were invalid to that extent. As suggested in *O'Shields v. Caldwell, supra*, 207 S. C. 194, 35 S. E. (2d) 184, the General Assembly may provide by law for the future compensation of a county officer by fees after having formerly placed him upon an exclusive salary basis of compensation. Appellant does not contend that the pertinent provisions of the annual supply acts may not be properly separated and held, as was done in the order under review, invalid in their retroactive aspect, but valid prospectively.

It is contended by the third question that it was error for the court to consider the supply acts of 1946 through 1949. Whether or not the court should have considered them in the absence of the pleading of them need not be considered because the complaint expressly referred to them in paragraph 5, from which we quote: "That plaintiff is informed and believes that in 1946, 1947, 1948 and 1949, the legislative delegates of York County enacted certain legislation to provide for the payment of certain fees to the defendant, D. D. McCarter, in addition to his legal salary which was fixed under the general law applicable to his office." Unquestionably, the acts were before the court and consideration and application of them was proper.

The fourth question assigns error in the acceptance of the legislative findings and recitals of fact of Section 16-A of the Supply Act of 1954, quoted above. Legislative findings of fact are presumptively correct and will be accepted by the court in the absence of allegation and proof to the contrary. *State ex rel. Edwards v. Query,* 207 S. C. 500, 37 S. E. (2d) 241. The complaint in this case contained no allegation of inaccuracy of the factual findings contained in Section 16-A, so the point attempted to be made by appellant is unavailable to him.

It is mistakenly asserted in question 5 that the provisions for payment of tax execution fees to the treasurer which were contained in the 1949 and preceding county supply acts were not re-enacted in 1950 and 1951, in the absence of the enactment of supply acts in those years. Reference has been made to the general law which automatically re-enacts the last enacted supply act if the legislature fails in any year to pass a supply act. The argument is that the provisions fall within the exceptions contained in Code, § 14-19, which is untenable because the exception is of "special appropriations for unusual purposes." The section continues in force not only the appropriations but the "terms and conditions contained in the last enacted supply act of such county." Likewise, the similar special act

of 1951, applicable to York County, supra, 47 Stat. (First part) 1584, re-enacted for that fiscal year "all legal provisions" of the Supply Act of 1949.

The contention of question 6 is that Section 16-A of the Supply Act of 1954 violated Section 9 of Art. X of the constitution because it authorized the payment of public funds without an appropriation made by law. But the funds which were authorized to be paid were not public funds; they were the proceeds of the collection of tax executions to which the treasurer was personally entitled under the annual provisions of the preceding supply acts because, as found by the legislature, they were upon executions issued after July 1, 1946. *Foster v. Taylor,* 210 S. C. 324, 42 S. E. (2d) 531. They did not belong to the county. We need not, therefore, determine whether the terms of Section 16-A did not, in fact constitute an appropriation of the funds which were directed to be paid; appellant defeats this portion of his argument by concluding it as follows, quoting from the brief: "There can be no doubt that if Section 16-A is unconstitutional that the tax collector has then paid out public moneys without an appropriation as provided by law and that he would be responsible therefor." The conditional premise of unconstitutionality is unsound.

Question 7 complains of the alleged lack of evidence that the funds held by the tax collector were proceeds of tax executions to which the treasurer was personally entitled. However, such finding is implicit in the declaration contained in Section 16-A and, again, there was no contrary allegation in the complaint. In this situation, the legislative finding was properly accepted by the court upon the presumption of the correctness of it.

Question 8, which is the last for consideration, is: Was the enactment of Section 16-A of the Act of 1954 an invalid encroachment by the legislative branch upon the judicial branch? This has reference to the fact that the statute undertook to settle pending litigation

by payment of the stated funds to the treasurer who should thereby be foreclosed of further claim against the county on account of tax executions issued by him. On its face the settlement appears to be fair and fully justified by the facts found by the legislature, by which the court is bound in this case, as seen above. It assumed the unconstitutionality of the retroactive feature of the provisions of the preceding supply acts and required the treasurer to forego claim to earned but uncollected execution fees to offset those unconstitutionally collected in the past. It appears to have been in good faith and presumably upon accurate information.

The old case of *McLaughlin v. County Commissioners*, 7 S. C. 375, is conclusively in point. There the legislature had by special act directed the levy of a county property tax and payment of the proceeds by the county treasurer in settlement of claims against the county which were held by plaintiff. The taxes were levied and collected but payment was refused by the county authorities upon the ground that an action at law thereabout was pending, the result of which they claimed the right to await, and contended that the legislative enactment was an unconstitutional exercise of a judicial function. The then constitutional provision was substantially the same as Section 14 of Art. I of the present Constitution of 1895, which prescribes the separation of the legislative, executive and judicial powers of the government and prohibits the exercise of the function of one of said departments by the others. The court upheld the act and ordered mandamus requiring the payment of the proceeds of the taxes pursuant to the terms of it. The public was likened to a private debtor in the right to offer a settlement of a pending claim, regardless of pendency of litigation, and it was held that the legislative branch is vested with such power which it may exercise with respect to the obligation of a county, and the court said: "The fact that such an Act may have the effect to fix upon the county an indebtedness not fairly resulting from the law of the contract does not in itself make the Act an exercise of judicial

function." Distinction was found in the fact that judicial action assumes to bind the contending parties who are before the court, whereas a legislative act assumes to bind only one of them—there and here the county. Accordingly in this instance, McCarter may have refused the settlement, but he chose to accept it.

Generally applicable to some of the problems presented by this case is the consideration that the legislature has plenary control of the counties. *Reese v. Hinnant,* 187 S. C. 474, 198 S. E. 403; *Parker v. Bates,* 216 S. C. 52, 56 S. E. (2d) 723, 726. In the first cited case it was said [187 S. C. 474, 198 S. E. 404]: "An examination of the Constitution of 1895 will not show a single provision attempting to define or create a uniform or definite form of county government, and where the Constitution does not prohibit or provide, then the legislature has plenary powers therein. Article 7, Sec. 11, has been repeatedly construed by this Court to give the General Assembly complete control over the government and other internal affairs of the Counties of the State." And in the latter: "Except for the constitutional provisions relating to counties they are subject to the plenary control of the legislature of the State * * *."

It is also interesting and enlightening to compare the case in hand with *Foster v. Taylor, supra,* 210 S. C. 324, 42 S. E. (2d) 531, where it was unsuccessfully contended that the court had usurped a legislative function, which is the converse of the contention of the instant appellant.

Judgment affirmed.

TAYLOR, OXNER and LEGGE, JJ., concur.

BAKER, C. J., not participating.